UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHARLES GRIFFITH,
    PLAINTIFF,

v.

PROCOLLECT, INC.,
EQUIFAX INFORMATION SERVICES LLC;
EXPERIAN INFORMATION SOLUTIONS, INC.,
AND TRANS UNION LLC,
    DEFENDANTS.

CIVIL ACTION NO.:

3:19-cv-1345

**JURY DEMAND**

**COMPLAINT**

Plaintiff Charles Griffith ("Plaintiff"), by and through the undersigned counsel, and with knowledge as to Plaintiff's own acts, upon information and belief and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery, alleges as follows:

**PRELIMINARY STATEMENT**

1.    This is an action for an actual, statutory, and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq*. ("Fair Credit Reporting Act" or "FCRA") and 15 U.S.C. §§ 1692, *et* seq. ("Fair Debt Collection Practices Act" or "FDCPA").

2.    Indeed,

> Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies. In 1970, the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA") was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. v. Burr, 551 U.S. 47, 52 (2007). Towards that end, the FCRA requires a company that reports consumer credit information, referred to as

a consumer reporting agency ("CRA"), to "adopt reasonable procedures for meeting the needs of commerce" which are "fair and equitable to the consumer." 15 U.S.C. § 1681(b).

*Burke v. Experian Info. Sols., Inc.,* No. 1:10-CV-1064 AJT/TRJ, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

3. Thus:

In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth, as they apply to this case, in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A).

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-CV-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

4. Congress made the following findings when it enacted the FCRA:

(1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

(2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C.

§ 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

5. The consumer reporting agency defendants have been sued thousands of times wherein an allegation was made that said defendants violated the FCRA.

6. Likewise, Defendant ProCollect, Inc. has been sued over one hundred times for violations of various consumer protection statutes, including but not limited to the federal Fair Credit Reporting Act and the Fair Debt Collection Practices Act.

7. "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA).

8. Despite federal law, Congressional mandate, federal, and state government enforcement actions and thousands of consumer lawsuits, credit report errors remain a significant problem for consumers, including Plaintiff.

9. The sale of consumers' most private and sensitive personal and financial information is a multi-billion-dollar industry for the CRAs.

10. Experian's parent corporation, Experian plc, reported $4.66 billion in revenue in 2018.[1]

---

[1] https://www.experianplc.com/media/3529/experian-2018-annual-report.pdf Last visited June 4, 2019.

11.     Equifax reported more than $3.4 billion in operating revenue in its annual report for year ending in 2018.[2]

12.     Trans Union reported over $2.3 billion in revenue for year ending 2018.[3]

## JURISDICTION & VENUE

13.     This Court has jurisdiction pursuant to 15 U.S.C. § 1681p, 15 U.S.C. § 1692k and 28 U.S.C § 1331.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

15.     Plaintiff is an adult individual and resides at 303 Palacio Street, Irving, Texas 75039.  Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

16.     Defendant ProCollect, Inc. ("Procollect") is a business entity that regularly conducts business in this judicial district, and which has a principal place of business located at 12170 North Abrams Road, Suite 100 Dallas, Texas 75243.  The principal purpose of Procollect is the collection of debts already in default using the mail and telephone, and Procollect regularly attempts to collect said debts.  Procollect is a "debt collector" as defined by 15 U.S.C. § 1692a(6) of the FDCPA and Procollect is also a person as defined by the FCRA.[4]

17.     Defendant Experian Information Solutions, Inc. ("Experian") does business in this judicial district and is an Ohio corporation with its principal place of business in California.

---

[2] https://investor.equifax.com/~/media/Files/E/Equifax-IR/Annual%20Reports/2018-annual-report.pdf Last visited June 4, 2019.

[3] https://investors.transunion.com/~/media/Files/T/Transunion-IR/annual-reports/2018/annual-report-2018.pdf Last visited June 4, 2019.

[4] Plaintiff is making a claim against ERC under § 1681s-2(b).  Plaintiff is not making a claim against said defendant under § 1681s-2(a).

4

Experian is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation. Experian outsources business services, including processing consumer disputes, to its vendor or sister company, or both, in Santiago, Chile.

18.    Defendant Equifax does business in this judicial district and is a Georgia corporation with its principal place of business in Georgia. Equifax is a CRA as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation. Equifax outsources business processes, including consumer disputes to other countries, such as Mumbai, India. One of Equifax's dispute vendors is Intelenet. Equifax also outsources business processing services to companies in the Philippines and Costa Rica.

19.    Defendant Trans Union does business in this judicial district and is a Delaware corporation with its principal place of business in Illinois. Trans Union does business in this judicial district. Trans Union is a CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation. Trans Union outsources business processes, including consumer disputes to other countries, such as Mumbai, India. One of Trans Union's dispute vendors is Intelenet.

20. Experian, Equifax, and Trans Union are referred to collectively as the "CRA Defendants" throughout the complaint.

## FACTUAL ALLEGATIONS

21. The CRA Defendants are regulated as "consumer reporting agencies" under the FCRA 15 U.S.C. § 1681a(f).

22. The CRA Defendants sell millions of consumer reports (commonly referred to as "credit reports" or "reports") per day and also sell credit scores.

23. Equifax's primary business is the sale of consumer reports.

24. Experian's primary business is the sale of consumer reports.

25. Trans Union's primary business is the sale of consumer reports.

26. Pursuant to the FCRA, the CRA Defendants must follow reasonable procedures which assure that the reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

27. The CRA Defendants sold credit reports relating to Plaintiff to third parties with inaccurate and derogatory information.

28. The inaccurate information includes, but is not limited to: two (2) Procollect collection accounts for an apartment in Lubbock, Texas; names; addresses; and employer information (the "inaccurate information") that does not belong to Plaintiff.

29. The inaccurate information harms Plaintiff's credit reputation because it does not accurately depict Plaintiff's credit history and creditworthiness.

30. One of the Procollect accounts, which ends in 8588, is being reported as a collection account and with an outstanding balance of $1,225.

31. The second Procollect account, which ends in 9039, is being reported as a collection account and with an outstanding balance of $1,293.

32. Both of the Procollect accounts relate to an apartment lease in Lubbock, Texas.

33. Plaintiff has never resided in Lubbock, Texas.

34. Plaintiff never signed a lease or a guaranty for an apartment lease in Lubbock, Texas.

35. Defendants have been reporting the inaccurate information through the issuance of false and inaccurate credit information and consumer credit reports that they have disseminated to various persons and credit grantors, both known and unknown.  The consumer reporting agency ("CRA") defendants have repeatedly published and disseminated consumer reports to such third parties from at least 2018 through the present

36. Plaintiff has disputed the inaccurate information with Equifax, Experian, and Trans Union by following said defendants' established procedures for disputing consumer credit information.

37. Plaintiff has disputed the inaccurate information with the CRA Defendants since August 2018.

38. Plaintiff disputed the inaccurate information no less than four times to Experian. Notwithstanding, Experian did not delete the disputed items of information and continued to prepare and issue credit reports concerning Plaintiff that included the inaccurate information. report the inaccurate information to third parties.

39. Plaintiff disputed the inaccurate information no less than four times to Equifax. Notwithstanding, Equifax did not delete the disputed items of information and continued to prepare and issue credit reports concerning Plaintiff that included the inaccurate information.

40. Plaintiff disputed the inaccurate information no less than four times to Trans Union. Notwithstanding, Trans Union did not delete the disputed items of information and continued to prepare and issue credit reports concerning Plaintiff that included the inaccurate information.

41. In connection with any reinvestigation, the CRA Defendants did not conduct any handwriting analysis, contact third parties, make a reasonable inquiry into the disputed information, request additional information from Plaintiff, or consider all relevant information supplied in support of Plaintiff's disputes.

42. For example, on or about August 27, 2018, Plaintiff disputed one of the Procollect accounts to the Consumer Financial Protection Bureau ("CFPB"). On August 28, 2018, Procollect responded to the CFPB complaint and represented to the CFPB and to Plaintiff:

> After review, Mr. Charles Griffith is correct. His name has been removed from the debt and his social security number. We will send a (*sic*) E-Oscar delete to all three credit bureaus to have the debt removed. Thank you for your time and patience in this matter.

43. Plaintiff provided the CRA Defendants with a copy of Procollect's response to the CFPB complaint. Notwithstanding, the CRA Defendants did not delete the account after receipt of the CFPB response.

44. Instead the CRA Defendants notified ProCollect of his repeated disputes.

45. Moreover, the Defendants began to report the second Procollect account. In other words, *after* Procollect acknowledged Plaintiff was correct, and said it would instruct the CRA Defendants to delete the account, Procollect verified the disputed account to the CRA Defendants and began to report a second collection account for the same underlying debt.

46. The CRA Defendants notified Procollect of Plaintiff's disputes no less than twelve (12) times.

47. In connection with any investigation of the disputed items of information, Procollect did not:

   a. Review all relevant information supplied by the CRA Defendants;

   b. Review all of its own records;

   c. Contact third parties; or

   d. Perform any handwriting analysis.

48. Despite Plaintiff's exhaustive efforts to date, the defendants have nonetheless deliberately, willfully, intentionally, recklessly, and negligently repeatedly failed to perform reasonable reinvestigations and/or investigations of the above disputes as required by the FCRA, have failed to remove all of the inaccurate information, and continue to report inaccurate information about Plaintiff.

49. As of result of the defendants' conduct, Plaintiff has suffered actual damages in the form of adverse credit action, lost credit opportunities, harm to credit reputation and credit score, out-of-pocket expenses, interference with Plaintiff's normal and usual activities, and emotional distress.

50. At all times pertinent hereto, the defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the defendants herein.

51. At all times pertinent hereto, the conduct of the CRA Defendants, as well as that of their agents, servants, and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

52. The CRA Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious and distinct injuries to Plaintiff that are outlined

more fully above and, as a result, the defendants are liable to the Plaintiff for the full amount of statutory, actual, and punitive damages, as well as such further relief as may be permitted by law for their violations of the FCRA or FDCPA, or both.

### COUNT ONE – VIOLATIONS OF THE FCRA
### (against ProCollect)

53. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

54. At all times pertinent hereto Procollect was a "person" as that term defined by 15 U.S.C. § 1681a(b).

55. At all times pertinent hereto, Procollect was a "user" and a "furnisher" of credit information as defined by the FCRA.

56. Procollect violated sections 1681n and 1681o of the FCRA by willfully and negligently failing to comply with the requirements imposed on furnishers and users of information pursuant to 15 U.S.C. § 1681s-2(b).

57. Procollect's conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages, and harm to the Plaintiff that are outlined more fully above, and as a result Procollect is liable to compensate Plaintiff for the full amount of statutory, actual, and punitive damages, along with attorney's fees and costs, as well as such other relief, permitted by law.

### COUNT TWO – VIOLATIONS OF THE FDCPA
### (against Procollect)

58. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

59. The above reporting of the inaccurate information to credit reporting agencies by Procollect are "communications" relating to a "debt" as defined by 15 U.S.C. §§ 1692a(2) and 1692a(5).

60. Any alleged debts at issue arose out of a transaction which was primarily for personal, family, or household purposes.

61. Procollect violated the FDCPA. Procollect's violations include, but are not limited to, violations of 15 U.S.C. §§ 1692e(2)(A), 1692e(8), 1692e(10) and 1692f, as evidenced by the following conduct:

   a. The false representation of the amount, character, or legal status of a debt;
   b. Communicating or threatening to communicate to any person credit information which is known, or which should be known, to be false; and
   c. Otherwise using false, deceptive, misleading, and unfair or unconscionable means to collect or attempt to collect a debt from the Plaintiff.

62. Procollect's acts as described above were done with intentional, willful, reckless, wanton, and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay monies relating to the inaccurate information.

63. As a result of the above violations of the FDCPA, Procollect is liable to Plaintiff in the sum of Plaintiff's statutory damages, actual damages, and attorney's fees and costs.

### COUNT THREE – VIOLATIONS OF THE FCRA
### (against Experian)

64. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

65. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d)

66. Pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, Experian is liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency in violation of 15 U.S.C. §§ 1681e(b) and 1681i

67. As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks damages in an amount to be determined by the jury.

68. The conduct of Experian was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages, and harm to the Plaintiff that are outlined more fully above and, as a result, Experian is liable to the Plaintiff for the full amount of statutory, actual, and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

**COUNT FOUR – VIOLATIONS OF THE FCRA**
**(against Equifax)**

69. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

70. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d)

71. Pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, Equifax is liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency in violation of 15 U.S.C. §§ 1681e(b) and 1681i

72. As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks damages in an amount to be determined by the jury.

73. The conduct of Equifax was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages, and harm to the Plaintiff that are outlined more fully above and, as a result, Equifax is liable to the Plaintiff for the full amount of statutory, actual, and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## COUNT FIVE – VIOLATIONS OF THE FCRA
### (against Trans Union)

74. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

75. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d)

76. Pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o, Trans Union is liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency in violation of 15 U.S.C. §§ 1681e(b) and 1681i

77. As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks damages in an amount to be determined by the jury.

78. The conduct of Trans Union was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages, and harm to the Plaintiff that are outlined more fully above and, as a result, Trans Union is liable to the Plaintiff for the full amount of statutory, actual, and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## JURY DEMAND

79. Plaintiff requests a jury trial on all claims.

## PRAYER

Wherefore, Plaintiff prays for judgment against the defendants as follows:

On the First Claim for Relief:

1. Actual damages;
2. Statutory damages;
3. Punitive damages;
4. Attorneys' fees and costs; and
5. Such other and further relief as may be necessary, just and proper.

On the Second Claim for Relief:

1. Actual damages;
2. Statutory damages;
3. Punitive damages;
4. Attorneys' fees and costs; and
5. Such other and further relief as may be necessary, just and proper.

On the Third Claim for Relief:

1. Actual damages;
2. Statutory damages;
3. Punitive damages;
4. Attorneys' fees and costs; and
5. Such other and further relief as may be necessary, just and proper.

On the Fourth Claim for Relief:

1. Actual damages;
2. Statutory damages;

3. Punitive damages;

4. Attorneys' fees and costs; and

5. Such other and further relief as may be necessary, just and proper.

On the Fifth Claim for Relief:

1. Actual damages;

2. Statutory damages;

3. Punitive damages;

4. Attorneys' fees and costs; and

5. Such other and further relief as may be necessary, just and proper.

                  Respectfully submitted,

                  */s/ Micah S. Adkins*
                  Micah S. Adkins
                  TX BAR NO. 24088777
                  **THE ADKINS FIRM, P.C.**
                  1025 Westhaven Blvd., Suite 220
                  Franklin, TN 37064
                  T:  (615) 370.6759
                  F:  (615) 370.4099
                  E:  MicahAdkins@ItsYourCreditReport.com
                  *Counsel for Plaintiff Charles Griffith*